```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARLOS FERNANDO PEREZ ARGUELLO,

                    Plaintiff,
                                                              REPORT AND
        -against-                                             RECOMMENDATION
                                                              22 CV 6236 (DLI)(RML)
WILSON JAVIER LOJAN,

                    Defendant.
-----------------------------------------------------------X
```
LEVY, United States Magistrate Judge:

By order dated March 1, 2023, the Honorable Dora L. Irizarry, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted, and that plaintiff be awarded $71,799.08 in damages, plus pre- and post-judgment interest, and $8,692 in attorney's fees and costs.

**BACKGROUND AND FACTS**

Plaintiff Carlos Fernando Perez Arguello ("plaintiff") commenced this wage and hour action on October 14, 2022, against defendant Wilson Javier Lojan ("defendant") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, filed Oct. 14, 2022 ("Compl."), Dkt. No. 1.) Plaintiff was employed as a manual laborer at defendant's construction company in Queens, New York, from around January 2020 through January 2022. (Id. ¶ 6.) Defendant owns, operates, and/or controls the construction company at which plaintiff worked and determined the wages and compensation of employees, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees. (Id. ¶ 10; see

also Memorandum of Law in Support of Plaintiff's Motion for Default Judgment, filed Feb. 27, 2023 ("Pl.'s Mem."), Dkt. No. 14, at 11.)

Defendant was properly served with the summons and the complaint. (See Affidavit of Service of Steeve Louis, sworn to Nov. 10, 2022, Dkt. No. 8.) Defendant has failed to answer or otherwise move with respect to the complaint. Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on December 2, 2022. (See Request for Certificate of Default, filed Dec. 2, 2022, Dkt. No. 9.) On December 6, 2022, the Clerk of the Court noted defendant's default. (See Clerk's Entry of Default, dated Dec. 6, 2022, Dkt. No. 10.) On February 27, 2022, plaintiff moved for default judgment. (See Motion for Default Judgment, dated Feb. 27, 2023, Dkt. No. 12.) Judge Irizarry referred plaintiff's motion to me on March 1, 2023. (See Order, dated Mar. 1, 2023.)

Plaintiff seeks default judgment on claims under the FLSA and NYLL for defendant's failure to (1) pay him minimum wages and overtime compensation, and (2) provide proper wage notices and wage statements. (See Compl. ¶ 2.) Plaintiff requests an award of unpaid minimum and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorney's fees and costs. (Id.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a

default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, as explained above, plaintiff has demonstrated that he properly served defendant with the summons and complaint. Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on defendant in compliance with Local Rule 55.2(c). (See Affirmation of Service, filed Feb. 27, 2022, Dkt. No. 13-7.)

### A. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL and wage statement and notice violations under the NYLL. (See Compl. ¶¶ 16-26.) The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he was

3

a covered employee under the FLSA and NYLL; and (3) defendant was his employer under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, the complaint, which was filed on October 14, 2022, alleges willful violations of the FLSA. (See Compl. ¶¶ 28, 35.) Therefore, the FLSA's three-year statute of limitations applies. Because plaintiff alleges that he was not properly paid wages from January 2020 through January 2022, I find that those claims are timely under the FLSA. (Id. ¶¶ 19-22; see also Pl.'s Mem. at 5, n.1 (noting a scrivener's error in the complaint indicating that plaintiff was only paid through January 2021).) Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL. See N.Y. LAB. L. §§ 198(3), 663(3). Thus, plaintiff's claims are also timely under the NYLL.

2. Employee Coverage

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiff must show that he was defendant's employee, and that defendant was an employer subject to the coverage of each statute. For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g). Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work for a covered employer. An employer is defined as "any person acting directly or indirectly in the interest of an employer in

relation to an employee."[1] 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." Id. § 203(a).

"Employers are subject to FLSA when their employees are either engaged in commerce or in the production of goods for commerce ('individual coverage') or employed in an enterprise engaged in commerce or in the production of goods for commerce ('enterprise coverage')." Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3 (E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)). "[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much. Aside from stating the nature of his work and the nature of [their employer's] business, plaintiffs must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that the was hired as a manual worker and worked for defendant from approximately January 2020 through January 2022. (See Compl. ¶¶ 14-15; see also Affidavit of Carlos Fernando Perez Arguello, sworn to Jan. 26, 2023 ("Perez Aff."), Dkt. No. 12, ¶ 4.) Furthermore, plaintiff affirmed that his work responsibilities involved handling goods that traveled in interstate commerce every day, such as construction supplies produced outside the State of New York. (Perez Aff. ¶ 8.) Accordingly, I find that plaintiff has

---

[1] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

established that he was a covered employee under the FLSA and the NYLL.

### 3. Employer Status of Defendant

To establish defendant's liability under the FLSA and NYLL, plaintiff must allege that defendant was his "employer" within the broad meaning of 29 U.S.C. § 203(d). See Fermin, 93 F. Supp. 3d at 35-37. The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Here, plaintiff alleges that defendant had the authority to hire and fire him, set his pay rate, and issue his pay; owned and controlled the construction company; set plaintiff's schedule; and maintained employee records. (Compl. ¶ 10; Perez Aff. ¶ 5; Pl.'s Mem. at 11.) Thus, plaintiff has alleged that defendant exercised sufficient control over plaintiff to find that he was plaintiff's employer.

### B. Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the

plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests damages in the total amount of $92,808.57 for unpaid minimum wage and overtime violations, liquidated damages, and wage notice and statement violations. (Damages Computation, attached as Ex. A to the Declaration of Jason Mizrahi, Esq., dated Feb. 27, 2023 ("Mizrahi Decl."), Dkt. No. 13-1.) I will address each category of damages in turn.

    1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted). Here, because defendant has defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimate of hours worked. Plaintiff asserts that, from approximately January 2020 through and including January 2022, he worked five to seven days a week from approximately 8:00 a.m. to 4:30 p.m. (approximately eight-and-a-half hours) each day. (Compl. ¶ 17; Perez Aff. ¶ 10.)

    a. *Minimum Wage*

Under both the FLSA and the NYLL, employees must be paid at least the

minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. LAB. L. § 652. At all times relevant to this action, the FLSA required defendant to pay plaintiff a minimum hourly wage of $7.25. 29 U.S.C. § 206(a)(1). However, New York law obligated defendant to pay plaintiff a minimum hourly wage of $15.00.[2] N.Y. LAB. L. § 652(1)(a)(i). Because New York's minimum wage is higher than the federal minimum wage, plaintiff may recover that amount. 29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

        To determine whether defendant paid plaintiff at least minimum wage, it is first necessary to determine his regular hourly rates of pay. Under both federal and New York law, when an employee is paid a flat, daily rate, irrespective of the number of hours actually worked, that employee's regular rate is computed by "totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112; see also N.Y.C.R.R. tit. 12, § 142-2.2. Plaintiff alleges that he was paid a daily rate of $120 from January 2020 through June 2020, $130 from July 2020 through December 2020, $140 from January 2021 through June 2021, and $170 from July 2021 through January 2022. (Compl. ¶¶ 19-22; Perez Aff. ¶¶ 12-15.) Plaintiff alleges that he worked more than forty hours per week – specifically, forty-two-and-a-half to fifty-nine-and-a-half hours a week. (Perez Aff. ¶¶ 9, 10.) Therefore, his regular hourly rate of pay is calculated using fifty-one, which reflects the average of the total hours he worked per week.

        Based on plaintiff's submissions and my own calculations, I find that defendant paid plaintiff a regular hourly rate of pay that was greater than the wage required by New York

---

[2] This is the minimum wage for both "large employers" (employers of eleven or more employees) and "small employers" (employers of ten or less employees). N.Y. LAB. L. § 652(1)(a)(i). Plaintiff has not specified defendant's number of employees. Regardless, the minimum wage during plaintiff's period of employment was $15.00 for both large and small employers.

law from July 1, 2021 through January 31, 2022. However, defendant did not pay plaintiff a regular hourly rate of pay that was equal to or greater than the wage required by New York law from January 1 through June 30, 2020. Therefore, plaintiff is owed damages for minimum wage violations for that period. I respectfully recommend that plaintiff be awarded $915.20 for minimum wage violations, in line with the below calculations.

| Regular Hourly Rate of Pay Calculation | | | | | |
|---|---|---|---|---|---|
| Pay Period | | Weekly Compensation (assuming average of 6 days of work) | Hours Worked per Week | Calc. Regular Rate of Pay | Minimum Wage Rate (NYLL) |
| From | To | | | | |
| 1/1/2020 | 6/30/2020 | $720 | 51 | $14.12 | $15.00 |
| 7/1/2020 | 12/31/2020 | $780 | 51 | $15.29 | $15.00 |
| 1/1/2021 | 6/30/2021 | $840 | 51 | $16.50 | $15.00 |
| 7/1/2021 | 12/31/2021 | $1,020 | 51 | $20.00 | $15.00 |
| 1/1/2022 | 1/31/2022 | $1,020 | 51 | $20.00 | $15.00 |

| Minimum Wage Calculation | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pay Period | | Weeks | Hours | Regular Rate of Pay | Minimum Wage Rate | Hourly Minimum Wages Owed | **Minimum Wages Owed** |
| From | To | | | | | | |
| 1/1/2020 | 6/30/2020 | 26 | 40 | $14.12 | $15.00 | $0.88 | **$915.20** |

    b. *Overtime Compensation*

Plaintiff alleges that defendant willfully violated the FLSA and NYLL by failing to pay him overtime wages. (Compl. ¶¶ 33-36, 38-42.) Plaintiff is entitled to compensation under the FLSA and NYLL at the rate of one and one-half times his regular rates of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for

9

calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

Plaintiff alleges that he worked approximately 42.5 to 59.5 hours per week and that defendant never paid him overtime compensation. (See Compl. ¶¶ 17, 18; Perez Aff. ¶¶ 10, 11.) To calculate the overtime compensation plaintiff is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rates of pay, or (ii) the applicable minimum wage. See Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019). To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period. Based on the Regular Hourly Rate of Pay Calculation above and the calculations in the below table, I respectfully recommend that plaintiff be awarded $29,974.34 in unpaid overtime wages.

| Overtime Wage Calculation | | | | | | |
|---|---|---|---|---|---|---|
| Pay Period | | No. Weeks Worked | Avg. OT Hours Worked per Week | Rate of Pay/Applicable Minimum Wage | OT Rate | Overtime Wages Owed |
| From | To | | | | | |
| 1/1/2020 | 6/30/2020 | 26 | 11 | $15.00 | $22.50 | $6,435.00 |
| 7/1/2020 | 12/31/2020 | 26 | 11 | $15.29 | $22.94 | $6,560.84 |
| 1/1/2021 | 6/30/2021 | 26 | 11 | $16.50 | $24.75 | $7,078.50 |
| 7/1/2021 | 12/31/2021 | 26 | 11 | $20 | $30.00 | $8,580.00 |
| 1/1/2022 | 1/31/2022 | 4 | 11 | $20 | $30.00 | $1,320.00 |
| **Total OT Wages Owed** | | | | | | **$29,974.34** |

2. Liquidated Damages

Plaintiff additionally requests liquidated damages for unpaid minimum and overtime wages. (See Pl.'s Mem. at 14; Compl. ¶¶ 36, 42.); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages

10

under both the FLSA and NYLL for the same period). Plaintiffs may recover liquidated damages in the amount of 100 percent of unpaid wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).

Here, defendant has not answered or otherwise appeared in this action and thus cannot demonstrate a "good faith" basis for believing the underpayment of wages was lawful. I accordingly recommend that plaintiff be awarded $30,889.54 in liquidated damages, which is the amount equal to his unpaid wages as represented above.

### 3. Wage Notices & Wage Statements

Plaintiff also seeks $10,000 total in statutory damages for defendant's failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3). (Compl. ¶¶ 45-46, 48, 49; Perez Aff. ¶¶ 18-22; Pl.'s Mem. at 14-15.) New York's Wage Theft Prevention Act ("WTPA") § 195(1) requires employers to give their employees written notice containing the "employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay" at the time of hiring. Deng v. Frequency Elecs., Inc., No. 21 CV 6081, 2022 WL 16923999, at *8 (E.D.N.Y. Nov. 14, 2022). NYLL § 195(3) requires employers "to provide, for each pay period, a statement ('wage statement') showing how that pay was computed including deductions." Id. Plaintiff asserts that he never received a wage notice or wage statements from defendant. (Compl. ¶¶ 45, 48; Perez Aff. ¶¶ 19, 20; Pl.'s Mem. at 15.)

The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and

11

concrete injury resulting from that violation. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021). Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing." Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Deng, 2022 WL 16923999, at *9 (finding that plaintiff lacked standing because the "complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); You Qing Wang v. XBB, Inc., No. 18 CV 7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); Francisco v. NY Tex Care, No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (". . . based on the record before the Court, it is not clear that [failure to provide wage notices and statements] led to an 'injury' that can be recognized by a federal court."). These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation. 19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant damages for wage statement and notice violations. See, e.g., Black v. 7714 Ent., Corp., No. 21 CV 4829, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022); Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022); Santos v. Cancun and Cancun Corp., No. 21 CV 192, 2022 WL 1003812 (E.D.N.Y. Feb. 17, 2022); Lamar v. A&O Brothers Corp., No. 21 CV 169, 2022 WL 1422439 (E.D.N.Y. Feb. 2, 2022); Willians v. Miracle Mile Props. 2 LLC, No. 20

CV 3127, 2022 WL 1003854 (E.D.N.Y. Feb. 1, 2022).

One such court recently found that a plaintiff bringing claims under the WTPA for wage statement and notice violations is not required to show "the downstream impact on the plaintiff of the non-provision of the required notice." Bueno v. Buzinover, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (adopting in part the Report and Recommendation but reversing the Report's finding that there was no Article III standing with respect to the wage statement and notice violations). In so finding, the court in Bueno emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves. Bueno, 2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like TransUnion and Maddox versus those arising in cases under the WTPA are fundamentally distinct. In TransUnion, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those plaintiffs that contained misleading OFAC alerts. TransUnion, 141 S. Ct. at 2208-09. However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to prevent via the disputed provisions. Id. As such, those 1,853 class members were deemed to have standing, whereas the remaining class members—whose misleading credit files had not been disseminated—were deemed not to have standing for failure to allege either actual or imminent harm. Id. at 2209. Similarly, in Maddox, the plaintiffs alleged violations of New

13

York's mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access to accurate financial information," "a false impression adverse to their credit status," and "the right to be free of these harms [as] recognized by the state legislature." Maddox, 19 F.4th at 61, 64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having "an actionable cloud on title to the property securing the discharged mortgage debt," (2) reputational harm; and (3) difficulty obtaining financing if they so pleased—alleged by the plaintiffs, had or would likely come to fruition.  Id. at 64-66.

The wage statement and notice violations alleged here are of a different class of harm than those alleged in TransUnion and Maddox.  The WTPA was enacted to "protect an employee's concrete interest in being paid what he or she is owed under the NYLL." Bueno, 2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage statement provisions are intended to serve as safeguards of employees' broader interest in being paid the wages they earned.  Bueno, 2023 WL 2387113, at *3.

Here, plaintiff alleges that defendant's failure to provide accurate wage notices and accurate wage statements denied him his statutory right to receive true and accurate information about the nature of his employment and related compensation policies.  (Perez Aff. ¶ 21.)  Furthermore, plaintiff asserts that "[d]efendant's breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages."  (Id. ¶ 22.)  Therefore, I find that plaintiff has Article III standing to raise these statutory violations, and I respectfully recommend that he be awarded $10,000 on these claims, representing $5,000 for wage statement violations and $5,000 for wage notice violations.  N.Y.

14

LAB. L. §§ 198(1-b), (1-d).

### 4. Pre-judgment Interest

Plaintiff requests pre-judgment interest. (Compl. at 8; Pl.'s Mem. at 15-16.) The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages. Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022). The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date. N.Y. C.P.L.R. §§ 5004, 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest. See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11. The midpoint of plaintiff's employment was January 15, 2021. (Pl.'s Mem. at 15.) Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $30,889.54 from January 15, 2021 to the date of this court's judgment at a per diem interest rate of $7.62 ($30,889.54 x 0.09/365).

### 5. Post-judgment Interest

Finally, plaintiff requests post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Moreover, post-judgment interest under Section 1961 is mandatory. See Fermin, 93 F. Supp 3d at 53. Therefore, I respectfully recommend that plaintiffs be awarded post-judgment interest under 28 U.S.C. § 1961.

### C. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. See 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198, 663(1). Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiff has satisfied this requirement. (See Attorney's Fees and Costs, attached as Exs. B, C to the Mizrahi Decl., Dkt. Nos. 13-2, 13-3.) The court next assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

16

Plaintiff seeks an award of $9,073.25 in attorney's fees and $467 in costs. (See Pl.'s Mem. at 17.) The requested attorney's fees reflect the work of one attorney and one paralegal. (See Attorney's Fees and Costs.) Plaintiff's counsel requests an hourly rate of $325 for the services of Jason Mizrahi, an associate at Levin-Epstein & Associates P.C. ("Levin-Epstein") who has been practicing law since 2016. (See Pl.'s Mem. at 17; Attorney's Fees and Costs; Mizrahi Decl., ¶ 7.) "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Diaz, 2022 WL 4646866, at *13 (quotation marks and citations omitted). Furthermore, other courts have recently approved Mr. Mizrahi's requested billing rate. See, e.g., Kuan v. Notoriety Grp. LLC, No. 22 CV 1583, 2023 WL 3937317, at *13 (S.D.N.Y. May 22, 2023), report and recommendation adopted, 2023 WL 3936749 (S.D.N.Y. June 9, 2023); Sims v. Crown Waste Corp., No. 22 CV 6047, 2023 WL 363070, at *2 (E.D.N.Y. Jan. 23, 2023). Therefore, I find that $325 per hour is a reasonable rate for Mr. Mizrahi.

Plaintiff provides no qualifications for the person identified as "Alexis Abrego" in the submitted time records and requests varied hourly rates – $402 per hour in one instance, $50 per hour in another, and $65 per hour in yet another. (See Attorney's Fees and Costs.) However, the court's online search revealed that Alexis Abrego has a LinkedIn profile including her experience as a paralegal at Levin-Epstein. Therefore, I will assign a reasonable hourly paralegal rate for the 6.75 hours of work conducted by Ms. Abrego. "Paralegals . . . typically receive an hourly rate of $75 in this district for [FLSA] cases." Burns v. Nurnberger Corp., No. 16 CV 6251, 2018 WL 5927575, at *12 (E.D.N.Y. Sept. 17, 2018), report and recommendation adopted sub nom, Burns v. Kelly Enterprises of Staten Island, LLC, 2018 WL 5928106 (E.D.N.Y. Nov.

17

13, 2018) (collecting cases); see also Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020). Accordingly, I find that a reasonable rate for the paralegal in this case is $75.

The court next looks to the reasonableness of the number of hours billed. To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiff's counsel seeks compensation for 30.5 hours of work. (See Attorney's Fees and Costs.) Having reviewed the submitted time records, I find the total of 30.5 hours to be reasonable. See, e.g., Zhang v. Asian Moon Rest. Corp., No. 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., No. 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case). Accordingly, I respectfully recommend that plaintiff be awarded $8,225 in attorney's fees.

18

Plaintiff additionally requests compensation for $467 in costs, representing $402 for this court's filing fee and $65 in service of process fees. (Pl.'s Mem. at 17; Attorney's Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiffs have submitted sufficient documentation for filing fees and service of process costs. (See Attorney's Fees and Costs.) Accordingly, I find $467 to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted. Furthermore, I respectfully recommend that plaintiff be awarded $71,779.08 in total, representing $30,889.54 in unpaid minimum and overtime wages, $30,889.54 in liquidated damages, and $10,000 for wage statement and notice violations. I also recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $30,889.54 from January 15, 2021 to the date of this court's judgment at a per diem interest rate of $7.62. Additionally, I recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, I recommend that plaintiff receive $8,225 in attorney's fees and $467 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives

the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

                                                Respectfully submitted,

                                                _____/s/_____
                                                ROBERT M. LEVY
                                                United States Magistrate Judge

Dated: Brooklyn, New York
        July 12, 2023